UNITED STATES v. EASTMAN et al.

(District Court, S. D. New York. August 2, 1918.)

1. INDICTMENT AND INFORMATION ⬅121(2)—BILL OF PARTICULARS—RIGHT THERETO.

Where an indictment charged that defendants conspired to impede enlistment service by public speeches, private solicitation, and the publication of a magazine, *held*, that they were entitled to a bill of particulars of the speeches etc., relied on.

2. ARMY AND NAVY ⬅40—CONSPIRACY TO CAUSE INSUBORDINATION IN MILITARY SERVICE.

The same rules govern an attempt to cause insubordination in the military forces that apply to an attempt to impede enlistment, and where the words likely to cause insubordination are used with intent the result is immaterial.

3. ARMY AND NAVY ⬅40—OFFENSES—CAUSING INSUBORDINATION—INDICTMENT.

While an indictment charging an attempt to cause insubordination in the military service must allege that the words were uttered under such circumstances that they were in the course of events likely to reach members of the military force, an indictment alleging publication of magazines calculated to cause insubordination and their distribution throughout New York and the United States is sufficient. ·

Max Eastman and others were indicted for conspiracy, in violation of the Espionage Act (Act June 15, 1917, c. 30, 40 Stat. 217), to impede, hinder, or retard enlistment service, and also for conspiracy to cause insubordination in military service, etc. On demurrer to the indictment. Demurrer overruled.

Earl B. Barnes, Asst. U. S. Atty., of New York City.

Morris Hillquit, of New York City, for defendants.

LEARNED HAND, District Judge. [1] The disposition of the main issues in this case follows that in United States v. Scott ·Nearing, 252 Fed. 223, just filed. The first count alleges a conspiracy in which the contemplated means is not specific, except as regards the publication of the magazine. The defendants will be entitled by bill of particulars, if they wish it, to a statement of the "public speeches" and "private solicitation" which are alleged, and to those parts of each number of the magazine relied upon as constituting a part of the conspiracy. They will be also entitled to particulars of the other means, if any, contemplated by the defendants to impede, hinder, or retard the enlistment service. The ·allegations as they stand would, however, support a prosecution. The agreement, though in its terms no more particular than the allegations, would be an agreement to commit a crime; for the reasons already given in the earlier case.

The second, third, and fourth counts are for obstructing the enlistment service, and the validity of the second is determined by the decision in Masses Pub. Co. v. Patten, 246 Fed. 24, 158 C. C. A. 250, Ann. Cas. 1918B, 999, which I so often referred to in the earlier case. That decision could not have been made unless there were portions of . the August number which, given the requisite intent, violated section

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. The third and fourth counts refer to the September and October numbers, respectively. Most of these appear to me innocent under any interpretation; they do not contain utterances which any one could suppose would obstruct enlistment. However, in the September issue there are one cartoon, "Having Their Fling," and one poem, "Young Lads First," which fall within the ruling, and in the October number there is the cartoon on page 9. The defendants may have, as before, bills of particulars, if they wish, of any other objectionable matter in all the numbers.

[2] The three last counts are for attempting to cause insubordination by the publication of the August, September, and October numbers, respectively. The count for conspiracy to cause insubordination Judge A. N. Hand dismissed on the first trial, and normally I should, of course, follow the ruling of a colleague in the same case; but upon consultation with him I learn that he based his dismissal upon the form of the pleading, and did not mean to draw a distinction between the two classes of crimes, which he does not perceive to exist in substance, any more than I do. It is true that the decision of the Circuit Court of Appeals expressed a doubt about the application of this clause of the statute, yet, with deference, it seems pretty clear that under the rule there laid down no valid distinction exists. The principle now established, and for that matter recognized elsewhere in the District Courts, depends upon the likelihood of the words to produce the result, coupled with the specific intent. So long as that remains the rule, the resulting insubordination is on the same basis as the resulting impediment to enlistment. Therefore I shall not make any difference between these classes of counts.

[3] There is an apparent difficulty in these counts, which turns out, I think, not to be real. It is certainly true that a pleader must allege, even in laying an attempt to cause insubordination, that the words were uttered under such circumstances that they were in the course of events likely to reach members of the military forces. Here the allegation is of distribution "throughout the city and county of New York and throughout the United States." However, we must distinguish between the substantive crime and an attempt, for which any act which was a step in the completion of the crime will serve. I may take notice of the fact that in August, September, and November the country was already subject to the draft, and that large numbers of men were under arms in New York and elsewhere. That being so, it is certainly true that any one in his senses, distributing a magazine generally throughout New York and the United States, must have supposed it would probably reach soldiers. Since the fact that he did reach soldiers is not a necessary allegation, and since an attempt need involve only an uncompleted act, which in the course of events would in fact tend to produce the forbidden results, the allegations are sufficient. The whole matter is of course technical, but even when taken strictly the pleading is good.

The result is entirely in accord with Judge Amidon's decision in U. S. v. Schutte, 252 Fed. 212, where the utterance of spoken words was not connected in any way with the military forces.

Demurrer overruled.